**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                          )
WADDINGTON NORTH AMERICA, INC.            )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )        Civil Action No. 09-4883 (GEB)
                                          )
SABERT CORPORATION,                       )        **MEMORANDUM OPINION**
                                          )
                    Defendant.            )
_____ )


**BROWN, Chief Judge**

         This matter comes before the Court upon the motions of Plaintiff Waddington North

America, Inc. ("Waddington") to dismiss Defendant Sabert Corporation's ("Sabert")

counterclaims (Doc. No. 20) and for summary judgment on Sabert's anticipation defense to

Waddington's infringement action. (Doc. No. 49.)  The motions are opposed.  The Court has

considered the parties' submissions and decided these matters without oral argument pursuant to

Federal Rule of Civil Procedure 78.  For the reasons stated below, the Court will grant in part and

deny in part Plaintiff's motions.

**I.       BACKGROUND**

          This case originates in a complaint filed by Waddington, a plastic tableware

manufacturing corporation and owner by assignment of U.S. Patent No. 6,983,542 ("the '542

patent"), for infringement of the '542 patent against Sabert, a competing disposable tableware

manufacturing corporation.  (Compl. at ¶¶ 8,11-12, 21; Doc. No. 1.)  Waddington seeks a

declaratory judgment that Sabert previously infringed the '542 patent in its original and

reexamined form through sale of its "First Impressions" line of "metallized plastic cutlery" and

would infringe the '542 patent in its reexamined form should it further undertake "manufacture,

use, sale, and/or offer for sale in the United States, and/or importation into the United States" of

First Impressions.  (Compl. at ¶¶ A-B.)  Plaintiff also seeks damages, costs, and to temporarily

and permanently enjoin Sabert from infringing the '542 patent.  (*Id.* at ¶¶ C-G.)  Sabert has filed

seven counterclaims against Waddington including claims sounding in inequitable conduct and

tortious interference. (Doc. No. 18.)

### B.    Procedural History

The '542 patent in dispute was issued to Waddington on January 10, 2006.  (Compl. at  ¶

11; Doc. No. 1.)  The patent covers Waddington's Reflections line of metallized plastic tableware,

launched in 2003.  (Compl. at ¶ 10; Doc. No. 1.)  Responding to an August 8, 2006 letter in which

Sabert's lawyer asserted that the '542 patent was invalid for anticipation by Spir-it, Inc.'s "Spirit"

cutlery products, Waddington requested *ex parte* reexamination in the United States Patent and

Trademark Office ("USPTO").  (Compl. at ¶¶ 11-14; Doc. No. 1; Answer at ¶ 39; Doc. No. 18.)

Shortly thereafter, on November 13, 2006, Sabert commenced the original action by filing for a

declaratory judgment that its First Impressions products did not infringe the '542 patent and also,

that the '542 patent was invalid.  On January 17, 2007, Waddington moved to "dismiss the

declaratory judgment claims or, in the alternative, to stay or administratively terminate the action

pending the outcome of the reexamination," as well as to dismiss Sabert's claims for damages.

(Pl.'s Br. at 3; Doc. No. 20-1.)  On September 14, 2007, the Court issued an Opinion (Civil

2

Action No. 06-543; Doc. No. 14) and Order (Civil Action No. 06-5423; Doc. No. 15) denying Waddington's motion to dismiss, granting Waddington's motion to stay, and also granting Waddington's motion to dismiss Sabert's claims for damages.  (Pl.'s br. at 3; Doc. No. 20-1.)  On March 13, 2008, the Court issued an order to administratively terminate the declaratory judgment action without prejudice.  (*Id.*)

The *ex parte* reexamination ultimately produced the '542 C1 Reexam Certificate on September 22, 2009, which held amended claims 1-17, 19-25, 32, 34-37 and new claims 38-48 of the '542 patent patentable over the recorded prior art.  (*Id.* at ¶ 17.)  Plaintiff then recommenced this action on September 23, 2009, by filing a complaint against Sabert for infringement of Waddington's '542 patent, "including amended and new claims issued in a reexamination certificate on September 22, 2009," (*Id.* at ¶ 1) and seeking a declaratory judgment that "Sabert would be liable for infringement of the new and amended claims set forth in the '542 C1 Reexam Certificate."  (Compl. at ¶ 26; Doc. No. 1.)

Sabert's December 17, 2009 amended answer included affirmative defenses and seven counterclaims against Waddington.  (Am. Answer at ¶¶ 14-25, 35; Doc. No. 18.)  Sabert counterclaimed for declaratory judgment of: (1) noninfringement; (2) invalidity of the '542 patent for indefiniteness and nonenablement**;** (3) invalidity of the '542 patent for obviousness and anticipation by prior art; and (4) unenforceability of the '542 patent, as amended and reexamined, based on to Waddington's "inequitable conduct before the USPTO."  (*Id.* at ¶ 218.)  Sabert further counterclaimed for declaratory judgment asserting: (5) Sabert's absolute intervening rights; (6) Sabert's equitable intervening rights; and (7) Waddington's tortious interference with Sabert's "prospective economic advantages and contractual relations."  (*Id.* at ¶

35.)  The amended answer also sought $500,000 in damages as well as attorney's fees, other

costs of this action, and any additional relief that the Court deems appropriate.  (*Id.* at p. 87, ¶¶

11-13.)

On December 23, 2009, Waddington filed a motion to dismiss Sabert's counterclaims and

to strike Sabert's affirmative defenses and claim for unliquidated damages.  (Doc. No. 20.)

Sabert opposes this motion and filed a cross motion for leave to amend its pleadings in order to,

*inter alia*, cure pleading deficiencies in its inequitable conduct and tortious interference

counterclaims.  (Doc. No. 32.)  Waddington opposes Defendant's cross motion.  (Doc. Nos. 34,

39.)

Subsequently, on April 23, 2010, Waddington filed a motion for summary judgment

(Doc. No. 49) on Sabert's (1) affirmative defenses that allege invalidity of the '542 patent and (2)

third counterclaim for declaratory judgment that the '542 patent's reexamined claims are invalid

for obviousness and anticipation by prior art.  (Pl.'s Br. at 3; Doc. No. 49-1.)  Sabert opposes the

motion.  (Doc. No. 57.)

## II.    DISCUSSION

Waddington filed a motion to dismiss Sabert's affirmative defenses, fourth and seventh

counterclaims, and demand for unliquidated damages.  (Doc. No. 20).  Sabert's fourth

counterclaim alleges that Plaintiff's inequitable conduct in the forms of material false

representations and breach of duty of candor before the USPTO during reexamination renders the

'542 patent unenforceable.  (Am. Answer at ¶ 218; Doc. No. 18.)  Waddington argues that this

claim should be dismissed because it fails to meet the pleading standard that Federal Rule of

Civil Procedure 9(b) mandates for inequitable conduct claims.  (Pl.'s Br. at 9-17; Doc. No. 20-1.)

On the same grounds, Waddington argues that Sabert's affirmative defenses, also alleging inequitable conduct, should be struck under FED. R. CIV. P. 12(f).  (*Id.* at 7-9.)

Sabert's seventh counterclaim alleges that Waddington "has knowingly and intentionally interfered with Sabert's business and contractual relationships with its customers" and "has wrongfully, knowingly, intentionally and without justification interfered with Sabert's prospective economic advantages with its customers." (Am. Answer at ¶¶ 305-306; Doc. No. 18.) Waddington argues that Federal patent law preempts Defendant's counterclaim of tortious interference and therefore, the counterclaim should be dismissed.  (Pl.'s Br. at 17; Doc. No. 20-1.)  Additionally, Waddington argues that Sabert's allegation that Waddington knew that it was asserting an invalid and not-infringed patent lacks sufficient factual support and thus should be dismissed.  (*Id.* at 19-20.)  Finally, Waddington argues that Sabert's prayer for damages of at least $500,000 in lost sales should be struck, because the form of prayer violates Local Civil Rule 8.1 by claiming unliquidated damages in a specified amount, rather than generally. (Pl.'s Br. at 23; Doc. No. 20-1.)

In response to Waddington's motion to dismiss, Sabert moved to amend its pleadings to: (1) correct a typographical error in its answer; (2) replead or amend any insufficiencies the Court finds in its pleadings; (3) clarify and amend its tortious interference pleading; and (4) to drop its claim for unliquidated damages of "at least $500,000," in concession of the claim's violation of L. CIV. R 8.1.  (Def.'s Opp'n at 34-35; Doc No. 32.)  In support of its motion, Sabert argues that leave to amend should be granted provided that, as here, the non-moving party would not suffer prejudice as the result of the amendment.  (*Id.* at 36.)  Defendant further argues that the "proposed amended pleadings meticulously advance the viable legal claims," therefore they

should not be denied for futility.  (*Id.* at 37.)

Waddington's motion for summary judgment asserts that (1) "Sabert's anticipation contentions improperly rely on multiple references"; (2) "Sabert's 'Secondary' references are not prior art references at all"; and (3) "Sabert is improperly relying upon an argument of obviousness" for the purpose of alleging anticipation that also fails as an independent argument for obviousness.  (Pl.'s Br. at 8, 15, 21; Doc. No. 49-1.)

### A.    Standard of Review

#### 1.    Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 570).  The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).  Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231

6

(3d Cir. 2008).   In evaluating a motion to dismiss, a court may consider only the complaint or

answer in which the claims that are the subject of the motion appear – here Sabert's answer,

exhibits attached to the complaint or answer, matters of public record, and undisputedly authentic

documents if the claims are based upon those documents.  *See Pension Benefit Guar. Corp. v.*

*White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### 2. *Motion for Leave to Amend Pleadings*

Federal Rule of Civil Procedure 15(a)(2) provides that, under the present circumstances,

"a party may amend [its] pleading only with the opposing party's written consent or the court's

leave.  The court should freely give leave when justice so requires."  The Supreme Court has

identified several factors to be considered when applying Rule 15(a):

> If the underlying facts or circumstances relied upon by a plaintiff may be a
> proper subject of relief, he ought to be afforded an opportunity to test his
> claim on the merits. In the absence of any apparent or declared  reason – such
> as undue delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously allowed,
> undue prejudice to the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc.– the leave sought should, as the rules
> require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Heyl & Patterson Int'l, Inc. v. F.D. Rich*

*Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981), cert. denied, 455 U.S.

1018 (1982); *Newlin v. Invensys Climate Controls*, Civ. No. 05-5746 (RBK), 2006 U.S. Dist.

LEXIS 61133, (D.N.J. August 16, 2006); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004);

*Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204-05

(3d Cir. 2006) (stating that "leave to amend must generally be granted unless equitable

considerations render it otherwise unjust.")

Thus, while "Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment as of course has passed," CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1486 (2d ed. 1990), Rule 15(a)'s "generous standard is tempered by the necessary power of a district court to manage a case" in light of the factors listed in *Foman*. *See Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 891 (5th Cir. 1987).

### 3.    Motion for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

**B.    Application**

### 1.    Plaintiff's Motion to Dismiss Defendants' Counterclaims, Defenses, and Demand for Unliquidated Damages

Plaintiff filed a motion to dismiss Defendant's: (I) fourth counterclaim of inequitable

8

conduct and similar affirmative defenses; (II) seventh counterclaim of tortious interference; and (III) demand for unliquidated damages.

I.      Inequitable Conduct

a.    <u>The Pleading Standard for Inequitable Conduct</u>

Waddington argues that the Court should grant a judgment on the pleadings under FED. R. CIV. P. 12(c) and dismiss Sabert's inequitable conduct allegations because they do not meet a heightened pleading standard. (Pl.'s Br. at 8-9; Doc. No. 20)  On the same grounds, Waddington argues that the Court should strike Sabert's affirmative defenses pursuant to FED. R. CIV. P. 12(f), as they incorporate the same insufficient inequitable conduct allegations. (*Id.* at 7-9.)

The Federal Circuit has held that inequitable conduct is analogous to fraud, which under FED. R. CIV. P. 9(b) must be pled with particularity. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009).  The *Exergen* court summarized its pleading standard for inequitable conduct as follows:

> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading party must identify the specific who, what, when, where, and how of the material misrepresentation of omission committed before the PTO.  Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen*, 575 F.3d at 1328-29.  *See also Howmedica Osteonics v. Wright Medical*, 2010 U.S. Dist. LEXIS 32291 (D.N.J. Mar. 30, 2010) (GEB).

b.     Material False Representations

Sabert's fourth counterclaim alleges that Waddington made material false representations to the USPTO during initial prosecution of the '147 application (which later matured into the '542 patent) and reexamination of the '542 patent when it asserted that its Reflections line of products had met commercial success and filled an unmet need in the market.  (Am. Answer at ¶ 220; Doc. No. 18).  Sabert alleges that such representations were false, because Waddington "knew or should have known" that the commercial success of its Reflections line "was not the result of the inventiveness or novelty of this product, but rather was the result of the apparatus and methods of mass producing the claimed product" developed by D2 In-Line Solutions. (*Id.* at ¶ ¶ 228-229.)  Further, Sabert argues that the allegedly false statements were material, because the USPTO examiner allowed Waddington to amend its '147 application claims during prosecution "*only because* of [Waddington's] evidence of secondary considerations, including . . . commercial success . . . ", and because the USPTO considered the commercial success and long felt need in allowing '542 to overcome obviousness rejections in initial prosecution and later in reexamination. (Def.'s Opp'n at 13; Doc. No. 32, citing Am. Answer at ¶ 226) (emphasis in brief).

In support of the alleged falsity of Waddington's representations, Sabert cites a June 2006 article from Injection Molding Magazine that "attributes the success of WNA's Reflections metallized disposable plastic cutlery to D2's manufacturing technology," (Am. Answer at ¶ 230; Doc. No. 18), and a signed declaration from Waddington's President and CEO to the USPTO. (*Id.* at ¶ 233.)  Sabert argues that the CEO's letter admitted that Reflection line's success was the result of manufacturing techniques rather than the invention Waddington claimed in the '542

patent. (*Id.*)

In moving to dismiss these claims, Waddington argues that Sabert's allegations attack Waddington as an organization generally and thus fail "to identify the individual or individuals who allegedly violated a duty of candor and good faith," as *Exergen* requires in its "who" prong. (Pl.'s Br. at 11; Doc. No. 20-1.)  Waddington also highlights the "what" of Sabert's pleading, arguing that Sabert's assertion that Waddington "knew or should have known" the alleged true source of the Reflections line's commercial success does not contain the specificity that the inequitable conduct heightened pleading standard requires. (*Id.* at 11-12.)  Further, Waddington contends that Sabert has failed to identify "when" Waddington's alleged false representations occurred adequately explain why and how Waddington's declarations to the USPTO are material. Finally, Waddington argues that Sabert has failed to "allege sufficient underlying facts from which a court may reasonably infer that [Waddington] acted with a requisite state of mind, *i.e.*, deceptive intent," as FED. R. CIV. P. 9(b) demands.  (*Id.* at 12.)

The Court concludes that Sabert's allegations regarding material false representations do not adequately allege inequitable conduct under *Exergen*.  Under the FED. R. CIV. P. 9(b) pleading standard, Sabert has not sufficiently identified the individuals involved or the information withheld and why it was material, nor has it alleged sufficient facts to support Waddington's deceptive intent.  *Exergen* requires a party bringing an inequitable conduct claim to identify "the specific individual associated with the filing or prosecution of the application  . . . who both knew of the material information and deliberately withheld or misrepresented it,"  575 F.3d at 1329, but Sabert has not identified any specific individuals in connection with the false representations it alleges.

11

Additionally, Sabert has not cogently explained how Waddington "knew or should have known" (Pl.'s Br. at 11; Doc. No. 20-1) that the D2 manufacturing process was the actual source of Reflection's market success, nor has it made a plausible argument that the D2 process was indeed the sole source of commercial success. The underlying facts that Sabert alleges do not support the reasonable inference that an individual associated with Waddington knew that the invention disclosed in the '542 patent did not contribute to Reflections' commercial success. Sabert has not adequately pled that Waddington engaged in "false representations and/or failure to disclose," thus the allegation that such practices were material and "intended to mislead and/or deceive the USPTO" must fail as well. (Am. Answer at ¶ 238; Doc. No. 18.) Sabert's allegations of material false representations will not survive Waddington's motion to dismiss.

c.   <u>Breach of Duty of Candor</u>

Defendant's fourth counterclaim also alleges that Plaintiff failed to cite prior art of which it "had actual or constructive knowledge . . . prior to the filing of the '147 patent application, and/or subsequent reexamination of the '542 Patent," (Am. Answer ¶¶ 239, 242) specifically: (1) a 1998 technical publication by Vergason Technology, Inc.("the Vergason publication") which discloses "using vacuum metallization techniques (e.g., sputtering) to coat a variety of plastic substrates or surfaces for decorative and reflective applications with a variety of metals," (*Id.* at ¶¶ 239, 240); (2) U.S. Patent No. 432,991 granted to Eggleston, et al. in 1890 ("the Eggleston patent") which discloses a "**cutlery article** having a **handle of hardened plastic material** . . ." (Am. Answer ¶¶ 251, 252; Doc. No. 18, citing U.S. Patent No. 432,991) (emphasis in original); (3) U.S. Patent No. 3,939,834 granted to McMahon in 1976 ("the McMahon patent"), which discloses "sputtering a thin metallic coating of stainless steel to the interior of plastic

12

receptacles," (*Id.* at ¶¶ 251, 253); and (4) U.S. Patent No. 6,322,859 to Pluim, et al. ("the Pluim patent") which "discloses coating the surfaces of plastic polymer substrates with a thin metallic coating of stainless steel by vacuum deposition (e.g., sputtering) . . ." (*Id.* at ¶¶ 251, 254.)

Sabert contends that "[a] reasonable Patent Examiner would have considered the prior art Vergason publication [as well as the Eggleston, McMahon, and Pluim patents] material to the patentability of the original issued '542 Patent and/or the reexamination '542 Patent." (*Id.* ¶¶ 246, 257.)  Further, Sabert concludes that Waddington's failure to cite the alleged prior art "was done in bad faith and with an intent to deceive the USPTO," in intentional breach of its duty of candor.  (*Id.* at ¶¶ 248-249.)

In support of its motion to dismiss, Waddington argues that: (1) Sabert has not addressed *Exergen*'s "who" or "when" questions with requisite specificity; (2) constructive knowledge is not sufficient for an allegation of fraudulent withholding of prior art.  Rather, the obligation to disclose extends only to "material prior art actually known to the inventor or his assigns, agents, and attorneys," (Pl.'s Br. at 14; Doc. No. 20-1) (citing *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437 (Fed. Cir. 1984)); and (3) Sabert has not identified claims and limitations in the allegedly withheld prior art that contribute to the materiality of the prior art with the particularity that *Exergen* requires.  (*Id.* at 14-17.)  The Court agrees with Plaintiff's first argument and therefore, need not address the second and third.

The duty of candor "applies only to individuals, not to organizations." *Exergen*, 575 F.3d at 1329 (citing Manual of Patent Examining Procedures ("MPEP") § 2001.01 (8th ed., rev. 2, May 2004)).  Sabert argues that it specifically named Waddington's President and CEO, Michael G. Evans, in its allegations, and thus the allegation is particular enough to survive *Exergen*.

13

(Def.'s Opp'n at 16; Doc. No. 32.)  However, Sabert only stated that Mr. Evans sent the USPTO a brochure showing Vergason's metallized cutlery for the purpose of pointing out Vergason's competitive efforts to copy, and thus the novelty and non-obviousness of, the claims contained in the '147 patent application.  (Am. Answer at ¶ 243; Doc. No. 18.)  Sabert's allegations do not suggest that Mr. Evans had any knowledge of the actual Vergason publication that Sabert alleges is prior art, nor of the Eggleston, McMahon, or Pluim patents.  Thus, Sabert's identification of "who" breached a duty of candor – "[Waddington] and/or [Waddington's] counsel"– is insufficient.  (Am. Answer at ¶ 242; Doc. No. 18.)

Sabert's identification of "when" Waddington's alleged breach occurred is also inadequate; the Defendant provides no specific dates or time period during which any individual became aware of the Vergason publication or the Eggleston, McMahon, and Pluim patents. (*Id.* at ¶¶ 239-259.)  Sabert alleges only that Waddington and/or its counsel had "actual or constructive knowledge" of the Vergason publication, and similarly:

> [Waddington] and/or [Waddington's] counsel, as standard practice, would have conducted prior art searches for use of stainless steel and other metals for coating plastic products, including plastic cutlery.  Therefore, on information and belief [Waddington] and/or [Waddington's] counsel had actual or constructive knowledge of one or more of the [Eggleston, McMahon, and/or Pluim patents], prior to filing the '147 patent application, during its prosecution, and/or during the reexamination of the '542 patent.

(*Id.* at ¶¶ 242, 255.)

For these reasons, Sabert's allegations of material false representations and breach of duty of candor are not sufficient under *Exergen*.  Pursuant to FED. R. CIV. P. 9(b) and 12(b)(6), the Court will grant Plaintiff's motion to dismiss Defendant's inequitable conduct counterclaim.

14

d.      Sabert's Affirmative Defenses

By virtue of Sabert's insufficient pleadings on its fourth counterclaim of inequitable conduct, Waddington argues that Sabert's affirmative defenses, pled even more broadly and incorporating the inequitable conduct allegations, fail to meet the heightened pleading standard as well.  (Pl.'s Br. at 8-9; Doc. No. 20.)  The Court agrees and will grant Waddington's motion to strike the defenses from Sabert's pleadings.

II.     Tortious Interference

Sabert's seventh counterclaim alleges that Waddington "intentionally made various misleading statements with material omissions to Sabert's existing and expected customers in order to interfere unfairly with Sabert's business relationships . . ."  (Am. Answer at ¶ 307; Doc. No. 18.)  Under New Jersey law, a claim for tortious interference with economic advantage must allege:

> (1) an existing reasonable expectation or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the claimant would have received the anticipated economic benefit in the absence of the defendant's interference; and (5) damages resulting from the defendant's interference.

*Pactiv Corp. v. Perk-Up, Inc.*, 2009 WL 2568105, at *11 (D.N.J. Aug. 18, 2009).

Waddington argues that federal patent law preempts Sabert's state law claim for tortious interference unless Sabert alleges that Waddington interfered in bad faith.  (Pl.'s Br. at. 18; Doc. No. 20.)  Further, Waddington argues that Sabert does not offer sufficient factual support to plausibly allege Waddington's bad faith.  (*Id.*)  The Court acknowledges that 35 U.S.C. § 287 conditionally privileges a patentee's statements regarding its patents, thus Waddington is correct

in asserting that Sabert's counterclaim must allege bad faith in order to survive preemption.  The Federal Circuit set forth this rule in *Zenith Electronics Corp. v. Exzec, Inc.,* 182 F.3d 1340 (Fed. Cir. 1999).

Here, Sabert has indeed alleged that Waddington acted in bad faith.  In support of its allegations, Sabert submitted as an exhibit to its complaint a letter that Waddington sent to Sabert's customers. (Doc. No. 18, Ex. E.)  The Court may consider this letter in ruling on Waddington's motion to dismiss.  *White Consol. Indus.*, 998 F.2d at 1196 (3d Cir. 1993).  The letter includes statements affirming the enforceability of the '542 patent and asking customers not to "be fooled by Sabert" or "purchase, resell or use allegedly infringing product(s)." (Doc. No. 18, Ex. E.)   Sabert alleges that these statements are intentionally misleading and replete with material omissions made in bad faith and for improper purposes. (Am. Answer at ¶¶ 307-10, 316; Doc. No. 18.)   Sabert opposes the present motion to dismiss.  Thus, the Court must take Sabert's well-pled, plausible allegations as true.  *Iqbal*, 129 S. Ct. at 1949.  The "plausibility" pleading standard for a Rule 12(b)(6) motion to dismiss is not as stringent as the Rule (9)(b) inequitable conduct pleading standard discussed above.  Therefore, while Sabert does not offer extensive factual support for its allegations, the Court is not unable to infer that Waddington acted in bad faith.  The Court concludes that the facts alleged, as supported by Waddington's letter, render Sabert's allegation of bad faith plausible thus sufficient to overcome preemption.

As Sabert's state law counterclaim is not preempted, the Court must consider whether Sabert's amended answer sufficiently alleges the five elements of tortious interference that New Jersey law requires.  Sabert alleges that: (1) "Sabert was and is in pursuit of business from its existing and potential customers, and therefore had reasonable expectation of prospective

16

economic advantage . . . from the sale of Sabert's Coated Plastic Cutlery Products . . ."  (Am. Answer at ¶ 301; Doc. No. 18); (2) "[Waddington] was and is aware of Sabert's protected interests and advantageous and contractual relationships with its customers ..." and "knew or should have known of Sabert's expectation of a prospective economic advantage from the sale of Sabert's Coated Plastic Cutlery . . ." (*Id.* at ¶¶ 300, 304); (3) "[Waddington] has knowingly and intentionally interfered with Sabert's business and contractual relationships with its customers . . . [and] prospective economic advantages with its customers . . ." by making "various misleading statements with **material omissions** to Sabert's existing and expected customers" in letters to Sabert's customers, (*Id.* at ¶¶ 305-8) (emphasis in original); (4) "but for [Waddington] wrongfully and intentionally interfering . . . there was a reasonable probability that Sabert would have received the anticipated economic benefit from such sales," (*Id.* at ¶ 315); and (5) "as a direct and proximate cause of [Waddington's] wrongful conduct, Sabert has lost sales and damages in an amount . . . believed to be in excess of at least $500,000, " because "customers have failed to place orders with Sabert's customers for its accused . . . product lines that were reasonably likely to have been placed but for this interference . . ." (*Id.* at ¶¶ 311, 319).  The Court concludes that Sabert's allegations are plausible.  Therefore, Waddington's motion to dismiss Sabert's seventh counterclaim of tortious interference will be denied.

### III.    Demand for Unliquidated Damages

In moving to strike Sabert's demand, Waddington argues that Defendant's prayer for damages should be struck, because it claims unliquidated damages in a specified amount rather than generally, as L. CIV. R. 8.1 requires.  (Pl.'s Br. at 23; Doc. No. 20-1.)  In its cross motion to amend its pleadings, Sabert conceded that the form of prayer was improper.  (Opp'n at 36; Doc.

No. 32).  Therefore, the Court will grant Waddington's motion to strike Sabert's demand for unliquidated damages from the pleadings.

### 2.     *Defendant's Motion for Leave to Amend Complaint*

Sabert moves to amend its complaint in order to correct an error and to cure any insufficient pleadings of inequitable conduct and tortious interference. (Doc. No. 32.) Waddington opposes this motion, arguing that Sabert's motion for leave to amend its complaint should be denied for repeated failure to cure deficiencies in amendments previously allowed and for futility.  (Pl.'s Reply at 10-11; Doc. No. 34.)  Sabert counters that it has amended its answer only once, as a matter of course, and therefore has not demonstrated repeated failure to cure deficiencies.  The Court agrees with Sabert.  Sabert's prior amendment to its answer fell under FED. R. CIV. P. 15(a)(1) and previous pleadings filed in Civil Action No. 06-5423 were dismissed "without prejudice to the rights of the parties to reopen the proceedings."  (Pl.'s Br. at 3; Doc. No. 20-1.)

With respect to futility, "[it is] clear that an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also  Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990), reasoning that an amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face," (citations and quotations omitted).)  As such, "[i]n assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Burlington*, 114 F.3d at 1434 (citing *Glassman*, 90 F.3d at 623) (further citation omitted)).

18

Here, Sabert's tortious interference pleadings need not be addressed, as the Court will deny Waddington's motion to dismiss that particular counterclaim.  In regard to the alleged futility of Sabert's inequitable conduct allegations, the dispositive question is whether Sabert's proposed amended answer (Doc. No. 33) would be legally sufficient under Rule 12(b)(6) as well as the heightened pleading requirement of Rule 9(b).  While Sabert's proposed amendments partially cure the inadequate "who," the Court concludes that they would nevertheless fail to sufficiently allege "underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.  Sabert's allegation that particular individuals at Waddington intentionally withheld or misrepresented the true source of the Reflections line's commercial success as well as Sabert's contention that individuals became aware of the Vergason publication or the Eggleston, McMahon, and Pluim patents no more establish "when" the alleged conduct occurred nor avoid unsupported legal conclusions than their previous iterations.  Therefore, granting Sabert leave to amend would be futile.  Defendant's motion for leave to file an amended complaint will be denied.

### 3.    *Motion for Summary Judgment*

Plaintiff also moves for summary judgment on the issue of anticipation only, arguing that the references cited by defendant in their Amended Invalidity Contentions filed pursuant to L. Civ. R. 3.3 do not anticipate the '542 patent because there is no single prior art reference that contains all elements of the claimed invention, and because several of the references are not prior art at all.  (Pl.'s Br. at 1; Doc. No. 49.)

In its opposition, in addition to arguing the merits, defendant argues that a decision on anticipation is premature given that no claim construction has yet been conducted.  Specifically, defendant argues that the claims of the patent-in-suit must be construed before an invalidity analysis can be performed.  *See Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Ricoh Co., Ltd. v. Katun Corp.*, 486 F.Supp.2d 395, 408 (D.N.J. 2007) (WHW) ("An anticipation analysis requires a two-step process. The first step is claim construction. The second step requires the Court to compare the properly construed claims with the subject matter described in the prior art references and identify the elements disclosed in the allegedly anticipating reference"); *see also Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1319-21 (Fed. Cir. 2004) (reversing a District Court's grant of summary judgment on anticipation because no claim construction had taken place); *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1195 n.4 (Fed Cir. 2003) ("Before the factual question of anticipation may be addressed, a court must first properly construe the claims before it.")

Plaintiff asserts in its reply brief that the issue is ripe because the claim construction issues will not touch the alleged deficiencies in the anticipatory references at issue in the summary judgment.  (Pl.'s Reply Br. at 3; Doc. No. 65.)  Plaintiff argues that "Sabert's anticipation contentions are deficient on their face" and no claim construction issues are implicated by this summary judgment motion.  (*Id.* at 2.)

The Court concludes that a ruling on anticipation of the '542 patent would be premature at this time.  The parties submitted their Joint Claim Construction Chart and Prehearing Statement (Doc. No. 56) on May 24, 2010, which contains proposed constructions for the claim terms "sputtering deposition process," "sputter deposition process," and "suitability for food

contact without an overcoat," among others.  The constructions of these terms have bearing, however remote, on the possible anticipation of the '542 patent by the references at issue in this summary judgment motion.  Claim Construction discovery closed on June 23, 2010, briefing just closed on September 20, 2010, and the Court has not held a Markman hearing.  The Court declines to rule on anticipation with claim construction issues outstanding.  Further, Local Patent Rule 3.7 permits Sabert to amend its invalidity contentions to drop the references that are the subject of this motion if the Court construes the limitations of the claims of the '542 patent such that they cannot be anticipated.

Therefore, without reaching the merits of the summary judgment motion, the Court will dismiss it with leave to re-file once a claim construction hearing has been conducted.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff's' motion to dismiss (Doc. No. 20) will be granted in part and denied in part.  Defendant's cross motion for leave to file an amended complaint (Doc. No. 36) will be denied.  Further, Plaintiff's motion for summary judgment will dismissed with leave to re-file.  An appropriate form of order is filed herewith.

Dated: September 29, 2010

                                                  /s/ Garrett E. Brown, Jr.
                                     GARRETT E. BROWN, JR., U.S.D.J.