**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WADDINGTON NORTH AMERICAN, INC., Plaintiff, | |
| v. | Civil Action No. 09-4883 (GEB) |
| SABERT CORPORATION, Defendant. | **MEMORANDUM OPINION** |

**BROWN, Chief Judge**

This matter comes before the Court on a motion and cross motion for summary judgment on whether two thickness ranges are supported by the written description of the patent. (Doc. Nos. 139, 154). Each party has filed an opposition. The Court has considered the parties' submissions and held oral argument on March 21, 2011. For the reasons set forth below, the Court denies Sabert's motion to invalidate based on lack of written description of the thickness ranges, but grants Waddington North American's ("WNA") cross motion that the patents are not invalid on this basis. [1]

## I. BACKGROUND

This is a patent infringement case involving metalized plastic cutlery. Plaintiff, WNA, is the assignee of the single patent at issue, U.S. Patent No. 6,983,542 ("the '542 patent"), for

[1] Defendant objects that Plaintiffs filed their cross motion late because the Court's order required all motions to be returnable on March 7, 2011. However, according to Local Civil Rule 7.1(h), a cross-motion "may be noticed for disposition *on the same day as the original motion*, as long as opposition papers are timely filed." (Emphasis added). As such, the motion was returnable March 7, and the Court considers it as timely.

plastic eating utensils covered with a thin metallic coating that gives them the appearance of real metal cutlery. (Compl. at ¶ 12; Doc. No. 1). In order to provide background on whether the metallic thicknesses of "less than about 2000 nanometers," "less than 1000 nanometers," or "less than about 200 nanometers" are supported by the specification of the issued patent, the Court will review the description that existed at filing and then credit the additions made throughout prosecution.[2]

This patent was originally filed as a provisional application ("the Provisional"); it was then amended when it was filed as a utility application, during prosecution, and finally after an ex-parte reexamination. In its original filing, the Provisional made several statements about the thickness of the metal coating that can be presented in three categories. First, it explained that one of the purposes of the invention was to reduce the cost of metalized plastic cutlery and "provide a method for metallization of injection-molded plastic cutlery at a reasonable incremental cost." (Provisional App. 2422, Sutton Decl. Ex. C. at 7 ("Provisional")). The Provisional spent the majority of the Background of the Invention explaining that the invention was an improvement over the prior art because the prior art processes for metalizing plastic cutlery were prohibitively expensive. (Provisional at 2-5). One way to decrease the cost was to "deposit[] the metal layer on only one side of the article" which would result in "metallic material savings – approximately only one –half of the surface area of the parts is metalized." (Provisional at 11-12).

Second, the Provisional limited the available thicknesses by explaining that the Physical Vapor Deposition ("PVD") process used to deposit the metal on the cutlery was capable of producing thicknesses that "range[] from few nanometers to *thousands of nanometers*." (*Id.* at

[2] Because WNA has withdrawn claim 34, which contained the "less than about 500 nanometers" thickness limitation, the Court does not address that limitation's support in the written description.

12) (emphasis added). Thus, the possible thicknesses were limited somewhat by the capabilities of the process.

Third, the Provisional described preferred thicknesses and provided examples of other potential metallic thicknesses. In doing so, it described the preferred thicknesses as a certain number of nanometers "or less," which suggested that less metal was preferred to more metal. Specifically, the provisional stated that in the preferred embodiment:

> (a) The cutlery items are made of a light-transmitting grade of a thermoplastic polymeric material.
> (b) The metallic coating is of the same composition as the stainless steel alloy used in real tableware cutlery.
> (c) The metallic coating thickness is *less than* 200 nanometers.

(Provisional at 13) (emphasis added). In three examples, the Provisional again stressed the thinness of the metallic coating and that such coating should be *less than* a certain thickness, specifically:

> 1. Metalized plastic food service tool comprising
>
> a plastic body whereupon
>
> *an extremely thin* metallic coating produced by a vacuum deposition process is deposited.
>
> . . . .
>
> 8. The metalized plastic food service tool of example 1 wherein said *thin* metallic coating is *less than* 1000 [nanometers].
>
> . . . .
>
> 18. The method of example 11 wherein said *thin* metallic coating is *less than* 1000 [nanometers].

(Provisional at 16-17) (emphasis added).

Less than a year after filing the Provisional, the patentee filed a utility application claiming priority from it. The specification of that filing and the specification as it ultimately issued included the above disclosures and added substantial elaboration on the thickness

limitation. First, the patent explained that vacuum deposition process, such as the PVD listed in the Provisional, were used deposit metal on the cutlery items of the invention. ('542 patent, 8:45-65). Second, it explained that cost and manufacturing time were the reasons that thicknesses under 200 nanometers were preferred:

> The thickness of the metallic coating can vary depending upon the particular application, but for weight, cost and manufacturing time, a thin layer is preferred. For example, in a preferred embodiment, the thickness is approximately 200 nanometers or less.

('542 patent, 8:4-8). Finally, the specification provided that the invention's "thin metallic coating is generally less than 1000 nm. ('542 patent, 5:17-18).

The patent completed examination and ultimately issued. In the issued patent, independent claims 1 and 25 contained a limitation requiring that the thickness of the metallic layer be "less than about 2000 nanometers." ('542 patent, 11:63-65, 12:23-25). Independent claim 13 was broader, and required only that the thickness be "less than thousands of nanometers." (*Id.* at 12:45-47). However, several dependent claims narrowed these thickness limitations. Claim 3 narrowed this parameter to claim only products whose metallic coating was "less than 1000 nanometers in thickness," and claim 35 claimed the preferred embodiment where the thickness of the metallic coating "is less than about 200 nanometers." ('542 patent, 12:53-55, 14:33-42). When one compares these claims to the specification, the exact thickness measurement of 2000 nanometers had not appeared as an upper limit. However, the specification listed both 1000 nanometers and 200 nanometers as upper limits of embodiments, commented that the thickness of the metallic coating was "generally less than 1000 nm," and included "less than thousands of nanometers" as the thicknesses that the sputtering PVD process was able to produce.

After the '542 patent issued, Defendant Sabert Corporation ("Sabert") notified WNA of its belief that the '542 patent was anticipated by prior art and WNA filed for reexamination. (*Id.* at ¶13). After WNA amended its claims to the satisfaction of the examiner, the PTO issued a reexamination certificate ("Reexamination Certificate") that found the amended claims were patentable over the prior art. (Compl., Ex. A; Doc. No. 1.) The amended claims narrowed the scope of several claims' thickness requirements from "less than thousands of nanometers" to "less than about 2000 nanometers" and added several claims with the "less than about 2000 nanometers" limitation. (Reexamination Certificate, '542 patent, 2:15-17, 3:4-6, 4:16-18). Claims 1 and 25 retained the 2000 nanometers limitation.

## II. DISCUSSION

### A. Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, a court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*,

811 F.2d 225, 231 (3d Cir. 1987). However, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Matsushita*, 475 U.S. at 586.

**B. Analysis**

***1. Written Description Legal Standard***

Pursuant to paragraph one of 35 U.S.C. § 112, the specification of a patent must contain "a written description of the invention . . . in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112, ¶ 1. The purpose behind the written description requirement is "to prevent an applicant from later asserting that he invented that which he did not." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991)).

"Compliance with the written description requirement is a question of fact." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002); *Laryngeal Mas Co. v. Ambu*, 619 F.3d 1367, 1373 (Fed. Cir. 2010). To meet the written description requirement, the specification must satisfy two closely related requirements. *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005). First, the specification "must describe the manner and process of making and using the invention so as to enable a person of skill in the art to make and use the full scope of the invention without undue experimentation." *Id.* at 1344-45. Second, it must "describe the invention sufficiently to convey to a person of skill in the art that

the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed." *Id.*

However, "[a]claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." *Id.* "That is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before." *Id*; *see Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Thus, "it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention[.]" *LizardTech*, 424 F.3d at 1345. Indeed, because the view is of a person of ordinary skill in the art, "the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the *complexity and predictability* of the relevant technology." *Ariad*, 598 F.3d at 1351 (emphasis added).

Violation of the written description requirement must be proved by clear and convincing evidence. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000).

***2. Arguments and Analysis***

Before beginning its analysis, the Court must point out a legal error made by Sabert in many of its legal arguments. Sabert seems to argue that the claims are invalid if the Court finds that they are not supported by the written description of the original Provisional application. This is simply not the case. The Court must invalidate the claims only if the specification of the latest filing does not support the claims. *See LizardTech, Inc.*, 424 F.3d at 1344 (Fed. Cir. 2005). The question of whether the written description in the Provisional supports the claims is

only relevant to whether the claims are entitled to the Provisional's priority date. *See* 35 U.S.C. § 120; *Vas-Cath*, 935 F.2d at 1557 (discussing a district court's conclusion that a patent was not entitled to *priority* based on a filing of a design patent). That consideration may affect the prior art available to prove that the patent was obvious or anticipated, but does not affect the validity of the claims. *See Vas-Cath*, 935 F.2d at 1557.

This is a motion to invalidate the patent for lack of written description, not to move the priority date and find the patent obvious or anticipated. As such, the Court will only consider whether the disclosures in the specification of the issued patent support the thickness limitations in the claims.

Moving to the substance of the motion, the Court concludes that, as a matter of law, the written description gave a person of ordinary skill sufficient guidance to conclude that the inventor described the 2000 nanometer thickness at the time of the most recent filing. Further, even if the written description did not support this limitation, the 1000 nanometer and 200 nanometer thickness limitations present in the dependent claims were explicitly presented in both the provisional and the specification. Because those thickness limitations override the language from the independent claims, they are valid even if the 2000 nanometer thickness is unsupported.

*a. The "less than about 2000 nanometer" is supported by the written description.*

No reasonable jury could find by clear and convincing evidence that the 2000 nanometer limitation was unsupported in the written description. The Provisional application contained statements linking using less metal to decreased costs, it expressed that the preferred embodiment was a thickness of 200 nanometers *or less*, and it explained that PVD sputtering could produce thicknesses on articles from "a few nanometers to thousands of nanometers." (Provisional at 2-5, 11-12, 13). Further, the specification explicitly mentioned that the reason a

thickness of less than 200 nanometers was preferred was because a thinner coating reduced the "weight, cost and manufacturing time" for the article. Regardless of which definition a jury chooses of a person of ordinary skill in the art, this would have been more than enough for them to immediately discern that a thinner reflective coating is preferred because it uses less material. (Vergason Decl. at ¶17; Doc. No. 61) (Defendant's expert argues a person of ordinary skill possesses a Bachelor's of Science and three to four years working with PVD technologies). Even a lay person would have so discerned. Thus, applying the "thinner is better" rule, such a person would have immediately discerned that 2000 nanometers was supported by the disclosure of thicknesses ranging to "thousands of nanometers;" 2000 is the lowest number supported by "thousands." (*See* McClure Decl. ¶¶49-51, Ex. A; Vergason Dep. 79:22-80:17). Therefore, even though the specification does "not contain examples explicitly covering the full scope of the claim language," the specification supports the claims because it gives enough information for a person of ordinary skill to easily extrapolate the rest. *See LizardTech*, 424 F.3d 1345.[3]

The Federal Circuit's decision in *Vas-Cath, Inc. v. Muhurkar*, where it reversed a district court's grant of summary judgment that the claims were not entitled to a priority date of an earlier design patent because its claims were not supported by the disclosure of the design patent, supports this conclusion. 935 F.2d 1555 (Fed. Cir. 1991). In *Vas-Cath*, the claim contained a limitation for a catheter's second diameter being substantially less than 1.0 times the size of the first diameter but substantially greater than 0.5 times its size. *Id.* at 1566. The patentee claimed priority from a design patent application that contained no description at all of these diameters, but only had a drawing of one embodiment that appeared to fall within that range. The Federal Circuit held that this was sufficient and that exact correspondence between the description and

[3] The Court notes that the efforts of Vergason to create a dispute here are conclusory, refuse to account for certain portions of the specification at critical junctures, and generally are unreliable.

the claims is not required so long as one skilled in the art could "derive" the claimed range from the specification. *Vas-Cath*, 935 F.2d at 1566. Indeed, the Federal Circuit found the district court erred "in applying a legal standard that essentially required the drawings . . . to necessarily exclude all diameters other than those within the claimed range." *Id.*

Here, there is sufficient disclosure such that no reasonable jury could find that the claim was unsupported by the written description. As discussed, there can be no legitimate dispute that a person of ordinary skill could derive the claim limitations. Similarly, the specification need not have excluded all ranges other than those claimed.

The Court is not persuaded by Sabert's citation of *Purdue Pharma LP v. Faulting Inc.*, 230 F.3d. 1320 (Fed. Cir. 2000). In that case, the claimed pharmaceutical formulation required a ratio of Cmax to C24 that was greater than two. *Id.* at 1324. However, after a bench trial, the district court found that nothing in the specification "in any way emphasize[d] the Cmax/C24 ratio" or suggested to one skilled in the art that the Cmax/C24 ratio was even "an aspect of the invention." *Id.* While there were examples that gave a Cmax/C24 ratio greater than two, there were also examples that showed a Cmax/C24 ratio of less than two and the Cmax/C24 ratios were not even mentioned in some examples. *Id.* at 1326. As a result, the district court's finding that the written description did not suggest to the person or ordinary skill that the Cmax/C24 ratios were an aspect of the invention was not clearly erroneous, and the Federal Circuit affirmed its finding of lack of written description. *Id.* The Federal Circuit concluded that the specification disclosed "a multitude of pharmacokinetic parameters, with no blaze marks directing the skilled artisan to the Cmax/C24 ratio or what value that ratio should exceed." *Id.*

This case is different. The preferred embodiment emphasized the thin coating, required it to be "less than" a thin quantity, and the thinness was discussed as an advantage for weight, cost

and manufacturing time in the specification. (‘542 patent, 8:4-8). Further, the specification mentioned that the coatings were “generally less than 1000 nm.” (‘542 patent, 5:17-19). Therefore, a person of ordinary skill would have immediately discerned that the thin coating was an important aspect of the invention; no reasonable jury could find otherwise.

The Court notes that Sabert has cited no binding authority for the proposition that, absent a suggestion that the range is preferred to any other, claiming a narrower range than that disclosed in the specification makes a claim invalid for lack of written description.[4] Rather, its binding authority supports only the proposition that claiming ranges *broader* than those disclosed in the patent fails the written description requirement. *See, e.g., Chiron Corp. v. Genetech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1050 (2005) (approving instructions that claims that are broader than the specification may lack written description); *Ralston Purina Co. v. Far-Mar-Co.*, 772 F.2d 1570, 1575-76 (Fed. Cir. 1985) (parent application disclosing 25%-27% water in soybean mixture does not support broader claims to “at least 20%,” “between 20% and 40%,” or “in the range of 20%-30%”); *Eiselstein v. Frank*, 52 F.3d 1035, at 1039-40 (Fed. Cir. 1995) (specification describing nickel content of 45%-50% does not support broader claim for 50% to 60%); *LizardTech*, 424 F.3d at 1345-48 (narrow scope of specification does not support broader claims unless they would convince one of skill in the art that the inventor possessed the broader claims). Such cases are more reasonable in their application because they prevent an applicant from claiming more than he actually invented; not, as is explicitly approved by the Federal Circuit, claiming less than what he invented. *Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 823 (Fed. Cir. 1988).

Sabert’s citation of cases from the complex art of biochemistry for the proposition that the disclosure of a genus does not support a description of a species is also not persuasive.

[4] Indeed, *Vas-Cath* seems to suggest the opposite. 935 F.2d at 1566.

Biochemistry is a field where the chemical properties of novel chemicals "may be difficult to predict . . . even when the behavior of analogous compounds is known to those skilled in the art." *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1571 (Fed. Cir. 1996) (also referring to the problem at issue as "complex"). The complexity and predictability of the field is an important factor in the written description analysis because it affects how much information a person of skill can extrapolate from what is explicitly described in the specification. *Ariad*, 598 F.3d at 1351 ("[T]he level of detail required to satisfy the written description requirement varies depending on . . . the complexity and predictability of the relevant technology." ).

The implications of the coating's thickness are not similarly complex. Based on the explicit disclosures of the specification, the implications of the thickness requirement can be extrapolated even by a lay person: the thinner the coating, the cheaper the final product. Thus, the application of cases from complex arts is inappropriate.

*b. Even if "less than about 2000 nanometers" is not supported by the written description requirement, "less than 1000 nanometers" and "less than about 200 nanometers" are.*

It cannot be disputed that, even if "less than about 2000 nanometers" was not supported by the written description, "less than 1000 nanometers" and "less than about 200 nanometers" are. The specification explicitly mentioned these values, which also mentioned that thinner values were preferred for cost reasons. ('542 patent, 8:4-8, 9:15-18; *see also* Provisional at 13, 16-17 (all examples emphasizing the thin or "extremely thin" metallic coating)). Thus, the written description supports claims 3 and 35 because the dependent language overrides the 2000 nanometer provision to narrow the scope of the claim. For example, after incorporating the claim it depends from, claim 3 would read:

3. A metalized plastic food service item, comprising:

> a plastic cutlery article having a display surface and an underside . . . .
>
> a thin metallic coating deposited on the display surface of said plastic cutlery article, wherein said thin metallic coating is of a sufficient thickness to impart a reflective metal-like appearance to the plastic cutlery article, said thickness being less than about 2000 nanometers . . . .
>
> wherein said thin metallic coating is less than 1000 nanometers in thickness.

Thus, the claim is only directed toward thicknesses less than 1000 nanometers, which was explicitly described in the specification. (‘542 patent, 5:17-18). Based on the undisputed facts, this claim element is supported by the written description.

*c. Sabert’s remaining argument*

Sabert’s only remaining argument is that the specification’s statement that the PVD process can produce thicknesses “from few nanometers to *thousands of nanometers*,” (‘542 patent, 8:62-64; Provisional at 12), was from the prior art and thus should be disregarded. This argument is surprising and need not waylay the Court long.

Even if it were true that this portion of the description was copied from the prior art, that is irrelevant. As the Supreme Court observed in *KSR International Co. v. Teleflex Inc.*, “most, if not all” inventions are combinations of elements in the prior art.[5] 550 U.S. 398, 415-17 (2007). Thus, the fact that the written description must draw from the prior art is hardly surprising. Indeed, the Court observes that if the patentee had not used the prior art to explain his invention, Sabert would be before the Court with a lack of enablement motion. Further, as discussed, it was clear that the patentee meant this description to refer to the process that the invention used to deposit metal and any argument that the patentee did not point to this passage or the thickness of the metal layer as a part of the invention must fail.

[5] If Sabert wishes to argue that the invention is obvious or anticipated in light of this prior art reference, it may do so at trial. Neither obviousness nor anticipation is the subject of this motion.

### *3. Vergason Declaration*

In its cross motion WNA moves for the exclusion of the Vergason Declaration attached to this motion because Sabert filed it after the close of expert discovery. (WNA Opp. Br. at 21). Sabert counters that the declaration is merely an elaboration on the opinions Vergason expressed in his *Markman* expert report, which Sabert filed long before the end of fact discovery. The Court concludes that the declaration should be excluded because it is unnecessary if it is a mere elaboration and is improper if it expresses new opinions.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), an expert is required to provide a report including:

> a *complete* statement of all opinions the witness will express and the basis and reasons for them[.]

(Emphasis added).

If a party "learns that in some material respect the disclosure or response is incomplete or incorrect" the party must supplement that disclosure within the time set by the Court. Fed. R. Civ. P. 26(a)(2)(D), 26(e), 37(c)(1). "If a party fails to provide information . . . . as required Rule 26(a) or (e). . . the party is *not allowed to use that information or witness to supply evidence on a motion*, at a hearing, *or at a trial*, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). As such, if an expert omits opinions or their basis from his report, he cannot remedy those deficiencies to support a motion unless the failure was justified or harmless. Rule 37, commentary to 1993 Amendment; *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (affirming the exclusion of late-produced evidence).

A district court's decision to exclude that evidence is within its discretion. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). In exercising that discretion, the district court should consider four factors:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;
> (2) the ability of the party to cure that prejudice;
> (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and
> (4) bad faith or wil[l]fulness in failing to comply with a court order or discovery obligation.

*Nicholas*, 227 F.3d at 148.

As an initial matter, the Court determines that while the report served for the *Markman* hearing was not one served in contemplation of the trial, that WNA had fair notice of these opinions and will suffer minimal prejudice from their use at trial. Therefore, both this report and the reports timely submitted for trial are properly considered by the Court and by the jury.

Turning to Vergason's new declaration that Sabert filed after the close of expert discovery, the Court concludes that if the declaration is simply an extension of one of these reports, it is unnecessary. To the extent that it offers opinions that stray from these reports, the Court finds that the declaration is prejudicial, that prejudice will be difficult to cure less than a week before trial, and that their admission will disrupt an orderly and efficient trial. Vergason had the opportunity to supplement his reports during expert discovery and did not do so. Before the jury, only Vergason's January 13, 2011 rebuttal report, his opening expert report, and the *Markman* expert report will be considered in determining whether Vergason has expressed opinions outside the scope of his reports.

WNA's cross motion also argues that Vergason is not an expert according to his own definition of an expert in his field, and that he is an expert in only vacuum metalizing and not

food service items. WNA has not filed a motion *in limine* to exclude his testimony, and asked only that his *new* expert declaration be stricken. (WNA Opp. Br. at 19). Moreover, this Court rejected WNA's argument on the record on March 21, 2011.

**III. CONCLUSION**

For the foregoing reasons, Sabert's motion for summary judgment of invalidity based on the lack of written description for the 2000 thickness is denied, and WNA's motion for summary judgment that this provision is supported by the written description is granted. The Court also concludes that even if the 2000 nanometer limitation was unsupported by the written description, the claims modifying that thickness to claim thicknesses less than 1000 and 200 nanometers are supported and survive any written description attack. Further, the request to strike Vergason's new declaration is granted.

Dated: March 22, 2011

/s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.