NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WADDINGTON NORTH AMERICAN, INC., ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 09-4883 (GEB) |
| SABERT CORPORATION, ) | **MEMORANDUM OPINION** |
| Defendant. ) | |

**BROWN, Chief Judge**

This matter comes before the Court on a motion and cross motion for summary judgment on whether the claim limitation "suitable for food contact without an overcoat" (the "suitability provision") is supported by the written description of the patent. (Doc. Nos. 142, 155). Each party has filed an opposition. The Court has considered the parties' submissions and heard oral argument on March 21, 2011. For the reasons set forth below, the Court denies both motions.[1]

I.  BACKGROUND

This is a patent infringement case involving metalized plastic cutlery. Plaintiff, Waddington North American ("WNA"), is the assignee of the single patent at issue, U.S. Patent No. 6,983,542 ("the '542 patent"), for plastic eating utensils covered with a thin metallic coating

---

[1] Defendant objects that Plaintiffs filed their cross motion late because the Court's order required all motions to be returnable on March 7, 2011. However, according to Local Civil Rule 7.1(h), a cross-motion "may be noticed for disposition *on the same day as the original motion*, as long as opposition papers are timely filed." (Emphasis added). As such, the motion was returnable March 7, and the Court considers it as timely.

that gives them the appearance of real metal cutlery. (Compl. at ¶ 12; Doc. No. 1). The patent's claims require that the metallic coating be "suitable for food contact without an overcoat." (Reexamination Certificate, Sutton Decl. Ex. B; Doc. No. 144-2). In its *Markman* Order, this Court construed the term to mean "the metallic coating has a durability and lack of toxicity in various use situations, conditions and environments such that it can be employed on cutlery used with food without the need for an overcoating used as a barrier." (*Markman* Order; Doc. No. 113). Defendants allege that the "suitable for food contact without an overcoat" limitation (the "suitability provision") is unsupported by the written description. Because this motion turns on whether there are disputed material facts as to the suitability provision's written description, the Court will set forth the information that the specification provides about food suitability without an overcoat, i.e. the lack of toxicity and durability of the coating.[2]

The specification of the issued patent made several statements that are relevant to food safety, which the Court will present in four categories: (1) statements about the invention's use as cutlery; (2) statements about food contact issues with the prior art; (3) statements suggesting that the invention did not require an overcoat; and (4) statements about the durability of the metal coating.

First, the patent made numerous statements about the fact that this invention related to food service items and cutlery. ('542 patent, 1:12-30, 6:9-11, 5:52-6:5).

Second, the specification explicitly mapped out the food contact issues of some of the prior art methods for making plastic cutlery appear to be metal cutlery.[3] The specification

---

[2] The Court notes that while it construed the term "suitable for food contact without an overcoat" using quotations from the specification, that does not, in and of itself, render the claim supported by the specification. The Court considered the prosecution history in so construing the term, which is not part of the specification. Second, when the Court made its constructions, it explicitly deferred judgment on Sabert's indefiniteness and written description arguments.

[3] The specification also makes numerous references to the "environmental impact" of certain prior art processes. However, it is unclear whether these statements refer to safety issues with food contact or with the environmental

2

mentioned that there were "food contact issues associated with . . . the use of metallic inks and carrier solvents that can be used for imparting a metallic look" on cutlery. ('542 patent, 3:29-30). The prior art process of centrifuging metal particles in plastic to make them rise to the surface was problematic because "the secondary step of cleaning and buffing the plastic piece" was necessary. ('542 patent, 3:65-67). Wet processes, such as electro-deposition, were also deemed unsuitable for imparting a metal like appearance to cutlery because the "parts [are] brought into contact with solutions containing metal ions, which must then be washed off to remove *any residual chemicals and for general hygiene reasons*." ('542 patent, 4:5-12) (emphasis added). Finally, the specification identified food safety issues with adding an overcoat to this invention, stating that "FDA approved versions of over coating compositions can be readily obtained" for use with the invention. ('542 patent, 4:63-5:3, 10:57-65). However, WNA has identified no portion of the specification that mentions food contact issues with *this* process of metallization when no overcoat is present.

Third, the specification makes several statements, implicit and explicit, that show that the invention contemplated metalizing the cutlery without an overcoat. The Description of the drawing referred to various views of cutlery in Fig. 1A to Fig. 4 that described the metalized cutlery, but did not mention an overcoat. ('542 patent, 5:51-6:5).[4] Most of the descriptions in the Detailed Description of the Preferred Embodiment do not mention the overcoat. ('542 patent, 7:3-8:45). Similarly, the preferred embodiment mentions applying the metallic coating, but not an overcoat. ('542 patent, 9:10-25).

---

impacts of the manufacturing process. Given that it is listed separately from food contact issues, the more likely inference seems to be that they relate to the environmental impact of the manufacturing process. Either way, these statements are not dispositive for either party's motion.

[4] The Court also notes that the Provisional from which the specification claims priority is almost exclusively directed toward cutlery without an overcoat. Indeed, the Provisional makes only a passing reference to the overcoat when discussing the prior art.

3

Further, in what the patent designates a "useful method of manufacture," the specification walks the person of skill in the art through the manufacturing process without mentioning an overcoat. In step 4, the cutlery is put through vacuum deposition to deposit metal and in step 5, is packed and shipped without adding an overcoat. ('542 patent, 9:47-67). The specification also does not add an overcoat in the trials described in column 10, lines 1-19 and no overcoat was present because adhesion of the metal coating was tested with tape peal tests and food contact tests. ('542 patent, 10:51-11:27).[5] There can be no legitimate dispute that the specification supports a metallic layer without an overcoat.

Fourth, as evidenced by the repeated tests for adhesion, and durability in food environments (*id.*), the patent repeatedly expressed concern over the adhesion of the metallic coating to the underlying plastic. The patent also lists a non-overcoat method for improving resistance to abrasion. ('542 patent, 10:66-11:5).

## II. DISCUSSION

### A. Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (noting that no issue for

---

[5] These food contact tests seem to be concerned with durability and are most likely directed toward the durability and adhesion of the coating, not the food safety of its coating. For example, the food contact tests determined whether the foods would "affect *the coating* or cause it to peel-off." ('542 patent, 18-20). Thus, certainly when weighing the inferences against WNA, these statements do not involve toxicity issues.

4

trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, a court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). However, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Matsushita*, 475 U.S. at 586.

   **B.   Analysis**

      ***1.    Written Description Legal Standard***

Pursuant to paragraph one of 35 U.S.C. § 112, the specification of a patent must contain "a written description of the invention . . . in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same." 35 U.S.C. § 112, ¶ 1. The purpose behind the written description requirement is "to prevent an applicant from later asserting that he invented that which he did not." *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1330 (Fed. Cir. 2003) (citing *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991)).

"Compliance with the written description requirement is a question of fact." *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 968 (Fed. Cir. 2002); *Laryngeal Mas Co. v. Ambu*, 619 F.3d 1367, 1373 (Fed. Cir. 2010). To meet the written description requirement, the specification must satisfy two closely related requirements. *LizardTech, Inc. v. Earth Resource*

*Mapping, Inc.*, 424 F.3d 1336, 1344 (Fed. Cir. 2005). First, the specification "must describe the manner and process of making and using the invention so as to enable a person of skill in the art to make and use the full scope of the invention without undue experimentation." *Id.* at 1344-45. Second, it must "describe the invention sufficiently to convey to a person of skill in the art that the patentee had possession of the claimed invention at the time of the application, i.e., that the patentee invented what is claimed." *Id.* However, an enabling disclosure does not necessarily fulfill the written description requirement. For example, a disclosure "where the specification discusses only compound A and contains no broadening language of any kind [might] very well enable one skilled in the art to make and use compounds B and C; yet the class consisting of A, B and C has not been described." *Vas-Cath*, 935 F.2d at 1562.

However, "[a]claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language." *Lizard Tech*, 424 F.3d at 1344-45. "That is because the patent specification is written for a person of skill in the art, and such a person comes to the patent with the knowledge of what has come before." *Id*; *see Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). Thus, "it is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention[.]" *LizardTech*, 424 F.3d at 1345. Indeed, because the view is of a person of ordinary skill in the art, "the level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the *complexity and predictability* of the relevant technology." *Ariad*, 598 F.3d at 1351 (emphasis added).

6

The party alleging a violation of the written description requirement must prove its allegations by clear and convincing evidence. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000).

### 2. *Arguments and Analysis*

Before beginning its analysis, the Court must point out a legal error made by Sabert in many of its legal arguments. Sabert seems to argue that the claims are invalid if the Court finds that they are not supported by the written description of the original Provisional application. This is simply not the case. The Court must invalidate the claims only if the specification of the latest filing does not support the claims. *See LizardTech, Inc.*, 424 F.3d at 1344 (Fed. Cir. 2005). The question of whether the written description in the Provisional supports the claims is only relevant to whether the claims are entitled to the Provisional's priority date. *See* 35 U.S.C. § 120; *Vas-Cath*, 935 F.2d at 1557 (discussing a district court's conclusion that a patent was not entitled to *priority* based on a filing of a design patent). That consideration may affect the prior art available to prove that the patent was obvious or anticipated, but does not affect the validity of the claims. *See Vas-Cath*, 935 F.2d at 1557.

This is a motion to invalidate the patent for lack of written description, not to move the priority date and find the patent obvious or anticipated. As such, the Court will only consider whether the disclosures in the specification of the patent support the suitability provision. It will not consider whether those disclosures appear in the Provisional application.

So narrowed, Sabert presents several arguments. Sabert argues that the there was no information in the specification to notify someone of skill in the art about what makes a metallic coating "suitable for food contact without an overcoat." Specifically, Sabert suggests that there is no disclosure from which a person of skill in the art could determine that some of the metals

7

disclosed were appropriate for food contact without an overcoat while others were not. (Sabert Op. Br. at 14; 21-22). Second, Sabert argues that the disclosure in the patent about FDA approved overcoats and food contact issues associated with metallic inks is not sufficient to support claiming food contact without an overcoat, particularly in light of the fact that they are disclosed as part of the prior art. (*Id.* at 26-33). Finally, Sabert argues that even in the specification as issued, the only supported method of improving abrasion resistance is using an overcoat.[6] (*Id.* at 24-25). Thus, Sabert concludes that there is no description of what qualifies as sufficiently durable to be "suitable for food contact without an overcoat." (*Id.*).

WNA counters that while it did narrow its claims in reexamination, this was simply a matter of the patentee properly claiming less than its invention. The Court finds that there is a material fact as to whether the disclosures of the specification support the "suitability for food contact without an overcoat" and denies both motions for summary judgment.

Two decisions demonstrate that there is a material fact as to the patent's written description for "suitability for food contact without an overcoat." First, the Federal Circuit's Decision in *Purdue Pharma LP v. Faulting Inc*., 230 F.3d. 1320 (Fed. Cir. 2000), shows that when there is nothing in the specification to point a person of ordinary skill in the art that an element is even part of the claimed invention, the claims may be invalid for lack of written description.

In that case, the claimed pharmaceutical formulation required a ratio of $C_{max}$ to $C_{24}$[7] that was greater than two. *Id.* at 1324. However, after a bench trial, the district court found that nothing in the specification "in any way emphasize[d] the $C_{max}/C_{24}$ ratio" or suggested to one

---

[6] This contention is based on a mistaken premise. Another method is disclosed in the patent. ('542 patent, 10:66-11:5).
[7] $C_{max}$ denotes the maximum blood plasma concentration during a dosage period whereas $C_{24}$ is the blood plasma concentration 24 hours after dosage.

skilled in the art that the Cmax/C24 ratio was even "an aspect of the invention." *Id.* While there were examples that gave a Cmax/C24 ratio greater than two, there were also examples that showed a Cmax/C24 ratio of less than two and the Cmax/C24 ratios were not even mentioned in some examples. *Id.* at 1326. As a result, because the district court's finding that the written description did not suggest to the person or ordinary skill that the Cmax/C24 ratios were an aspect of the invention was not clearly erroneous, and the Federal Circuit affirmed its finding of lack of written description. *Id.* The Federal Circuit concluded that the specification disclosed "a multitude of pharmacokinetic parameters, with no blaze marks directing the skilled artisan to the Cmax/C24 ratio or what value that ratio should exceed." *Id.*

However, that case was on review after a bench trial and the district court had made a finding of fact that there was nothing to suggest that the ratio was an aspect of the invention. In this case, motions for summary judgment are before the Court, and the Federal Circuit's decision in *Vas-Cath, Inc. v. Muhurkar*, demonstrates that expert testimony is important in determining exactly what a person of skill in the art can extrapolate from the written description. 935 F.2d 1555 (Fed. Cir. 1991).

In *Vas-Cath*, the Federal Circuit reversed a district court's grant of summary judgment that a claim was not entitled to the priority date of a design application. *Id.* The claim contained a limitation for a catheter's second diameter being substantially less than 1.0 times the size of the first diameter but substantially greater than 0.5 times its size. *Id.* at 1566. The design patent application contained no description at all of these diameters, but only had a drawing of one embodiment that appeared to fall within that range. The Federal Circuit reversed the district court's grant of summary judgment and held that this disclosure could have been sufficient in light of the expert reports because exact correspondence between the description and the claims

is not required so long as one skilled in the art could "derive" the claimed range from the specification. *Vas-Cath,* 935 F.2d at 1566. In doing so, the Federal Circuit relied extensively on information from one of the parties' experts, Dr. Ash, to bridge the gap. Dr. Ash explained

> why one of skill in the art of catheter design and manufacture, studying the drawings of the '081 application in early 1982, would have understood from them that the return lumen must have a diameter within the range recited by independent claims 1 and 7 of the '329 patent. Dr. Ash explains in detail that a return (longer) lumen of diameter less than half that of the two lumens combined would produce too great a pressure increase, while a return lumen of diameter equal or larger than that of the two lumens combined would result in too great a pressure drop. "Ordinary experience with the flow of blood in catheters would lead directly away from any such arrangement[.]"

*Vas-Cath*, 935 F.2d at 1566. Thus, while the drawings themselves did not point to the ratio of the diameters as an aspect of the invention, the skill in the art could bridge the gap.

Here, there is such a gap. While the specification mentions durability issues, the negative food effects of the prior art metallic inks, and other methods of making plastic cutlery with the appearance of metal cutlery, it never mentions any potential issues of food safety with the metal deposition process. As such, it is not entirely clear from the specification that food safety issues are even a consideration for metallic surfaces deposited by the vacuum deposition of the invention. *See Purdue Pharma LP,* 230 F.3d. at 1326. And, unlike the other motion before the Court, the Court cannot say as a matter of law that a person of skill in the art would have understood that the suitability provision was an aspect of the invention. *See Vas-Cath*, 935 F.2d at 1566. Thus, the expert testimony on this issue will be important. Such testimony is hotly disputed. This creates a dispute of material fact as to whether the suitability provision is supported by the written description and the Court denies both cross motions.

### 3. *Vergason Declaration*

In its cross motion WNA moves for the exclusion of the Vergason Declaration attached to this motion because Sabert filed it after the close of expert discovery. (WNA Opp. Br. at 21). Sabert counters that the declaration is merely an elaboration on the opinions Vergason expressed in his *Markman* expert report, which Sabert filed long before the end of fact discovery. The Court concludes that the declaration should be excluded because it is unnecessary if it is a mere elaboration and is improper if it expresses new opinions.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), an expert is required to provide a report including:

> a *complete* statement of all opinions the witness will express and the basis and reasons for them[.]

(Emphasis added).

If a party "learns that in some material respect the disclosure or response is incomplete or incorrect" the party must supplement that disclosure within the time set by the Court. Fed. R. Civ. P. 26(a)(2)(D), 26(e), 37(c)(1). "If a party fails to provide information . . . . as required Rule26(a) or (e). . . the party is *not allowed to use that information or witness to supply evidence on a motion*, at a hearing, *or at a trial*, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). As such, if an expert omits opinions or their basis from his report, he cannot remedy those deficiencies to support a motion unless the failure was justified or harmless. Rule 37, commentary to 1993 Amendment; *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (affirming the exclusion of late-produced evidence).

11

A district court's decision to exclude that evidence is within its discretion. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). In exercising that discretion, the district court should consider four factors:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;
> (2) the ability of the party to cure that prejudice;
> (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and
> (4) bad faith or wil[l]fulness in failing to comply with a court order or discovery obligation.

*Nicholas*, 227 F.3d at 148.

As an initial matter, the Court determines that while the report served for the *Markman* hearing was not one served in contemplation of the trial, that WNA had fair notice of these opinions and will suffer minimal prejudice from their use at trial. Therefore, both this report and the reports timely submitted for trial are properly considered by the Court and by the jury.

Turning to Vergason's new declaration that Sabert filed after the close of expert discovery, the Court concludes that if the declaration is simply an extension of one of these reports, it is unnecessary. To the extent that it offers opinions that stray from these reports, the Court finds that the declaration is prejudicial, that prejudice will be difficult to cure less than a week before trial, and that their admission will disrupt an orderly and efficient trial. Vergason had the opportunity to supplement his reports during expert discovery and did not do so. Before the jury, only Vergason's January 13, 2011 rebuttal report, his opening expert report, and the *Markman* expert report will be considered in determining whether Vergason has expressed opinions outside the scope of his reports.

WNA's cross motion also argues that Vergason is not an expert according to his own definition of an expert in his field, and that he is an expert in only vacuum metalizing and not

food service items. WNA has not filed a motion *in limine* to exclude his testimony, and asked only that his *new* expert declaration be stricken. (WNA Opp. Br. at 19). Moreover, this Court rejected WNA's argument on the record on March 21, 2011.

**III. CONCLUSION**

For the foregoing reasons, both cross motions are denied, the new declaration of Vergason is stricken, but the timely served expert reports and the report used for the *Markman* hearing are properly before the Court.

Dated: March 22, 2011

                                                      /s/ Garrett E. Brown, Jr.
                                        GARRETT E. BROWN, JR., U.S.D.J.