<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| WADDINGTON NORTH AMERICAN, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 09-4883 (GEB) |
| SABERT CORPORATION, | ) |
|  | ) **MEMORANDUM OPINION** |
| Defendant. | ) |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court on a motion for partial summary judgment by Waddington North American, Inc. ("WNA") that Sabert Corporation's product infringes its patent. (Doc. Nos. 135, 160). Sabert opposes the motion. The Court has considered the parties' submissions and heard oral argument on March 17, 2011. For the reasons set forth below, the Court grants the motion with respect to all asserted claims except claim 25.[1]

**I.   BACKGROUND**

This is a patent infringement case involving metalized plastic cutlery. Plaintiff, Waddington North American ("WNA"), is the assignee of the single patent at issue, U.S. Patent No. 6,983,542 ("the '542 patent"), for plastic eating utensils covered with a thin metallic coating that gives them the appearance of real metal cutlery. (Compl. at ¶ 12; Doc. No. 1).

---

[1] The Court notes that after filing this motion WNA withdrew several asserted claims. Specifically, WNA withdrew its infringement assertions on claims 2, 5, 6, 7, 10, 34, 38-45, and 47. WNA still asserts claims 1, 3, 12, 25, 35, and 38. The Court will not address any of the withdrawn claims.

The '542 patent was filed on August 26, 2002 and issued on January 10, 2006, with thirty-seven claims. After the patent issued, Defendant Sabert Corporation ("Sabert") notified WNA of its belief that the '542 patent was anticipated by prior art and WNA filed for reexamination. (*Id.* at ¶13). After WNA amended its claims to the satisfaction of the examiner, the PTO issued a reexamination certificate ("the '542 reexam") that found the amended claims were patentable over the prior art. (Compl., Ex. A; Doc. No. 1.) The amended claims were narrower.

The elements of these claims are critical to the question before the Court because an infringing product must contain every element of the claims. For the purposes of this motion, claims 1 and 25 in the reexamination certificate are representative of the issues before the Court. Claim 1, with emphasis on the elements Sabert alleges are not present in its product, claimed "a metalized plastic food service item comprising:

> a plastic cutlery article having a display surface and an underside, said plastic cutlery article being adapted for placement on a table surface in a traditional table-setting presentation with said underside facing down towards said table surface and said display surface facing upwards; and
>
> a thin metallic coating *deposited on said display surface* of said plastic cutlery article,
>
> wherein said thin metallic coating is characterized by its suitability for food contact without an overcoat, and is at least one of steel and stainless steel,
>
> and wherein said thin metallic coating *is of a sufficient thickness to impart a reflective metal-like appearance* to the plastic cutlery article, to simulate genuine metal cutlery, said thickness being *less than about 2000 nanometers* and wherein said thin metallic coating is deposited by a vacuum deposition process.

(Reexamination Certificate, 1:26-44). In its briefing, Sabert only suggests that its products lack the limitation that the thickness be sufficient to impart a reflective metal-like appearance and that the thickness be less than about 2000 nanometers (Sabert Opp. Br. at 10-16); however, its

2

30(b)(6) witness asserted that because Sabert's products coated both sides, its products did not have the metallic coating "deposited on said display surface."

The other representative claim, claim 25, claims "a cutlery article for handling and consuming food, comprising

> *a light transmitting plastic material* and having a plurality of surfaces, wherein *at least one surface* amongst said plurality of surfaces is deposited with a thin metal layer suitable for food contact without an overcoat;
>
> said thin metal layer being deposited by a sputter deposition process,
>
> whereby *a reflective metal-like appearance* is imparted to at least a portion of said cutlery article, and said thin metal layer being *less than about 2000 nanometers.*

(Reexamination Certificate, 2:59-3:6) (emphasis on terms in issue). In addition to the same contentions as above, Sabert contends that its products are not made out of a light transmitting plastic material. (Sabert Opp. Br. at 18).

Sabert provided a 30(b)(6) witness, Darryl Nazareth, Sabert's Vice President of Product Development, Materials and Sustainability. Sabert represented that Mr. Nazareth was qualified to testify to several topics, including:

> 2.  The development, manufacture, materials, structure, and physical parameters of all Sabert metalized Cutlery (including Sabert Metallized Cutlery coated with stainless steel and Sabert Metallized Cutlery coated with titanium), including:
>
>   a.  the particular metal used;
>
>   b.  *the thickness of the metal coating*;
>
>   c.  the presence, absence, and/or nature of any overcoat;
>
>   d.  the particular plastic material utilized;
>
>   e.  the process by which the plastic is formed;
>
>   f.  *the optical characteristics of the plastic*;

3

> g. *the optical density of the composite plastic/metal product*;
>
> h. *the reflectivity of the metalized cutlery products*; and
>
> i. the process by which the metal is applied to the plastic.

(Wepner Decl. Ex. 3) (emphasis added). In line with these topics, for which Mr. Nazareth was qualified to respond, Mr. Nazareth made several statements that narrowed the infringement issues.

Mr. Nazareth admitted that Sabert's products are plastic cutlery articles and the plastic used is polystyrene, (Nazareth Dep. at 64:12-14; Doc. No. 135-4), the cutlery articles are coated with stainless steel, (*id.* at 63:10-16), that the coating is "suitable for food contact" without an overcoat, (*id.* at 64:9-11), that the steel coating is of sufficient thickness to impart a "reflective metal-like appearance" that simulates "the metallic appearance of solid metal cutlery" (*id.* at 31:9-13, 68:5-11), that Sabert's products had a optical density that was greater than 2 (*id.* at 81:12-20. 120:15-22), and that the metallic coating is less than 500 nanometers in thickness, (*id.* at 63:21-64:4).

## II. DISCUSSION

### A. Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (noting that no issue for

trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, a court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).  However, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Matsushita*, 475 U.S. at 586.

  **B.**  **Analysis**

    **1.**  ***Infringement Legal Standard***

  "A patentee claiming infringement must present proof that the accused product meets each and every claim limitation."  *Forest Labs., Inc. v. Abbot Labs.*, 239 F.3d 1305, 1310 (Fed. Cir. 2001).  If a limitation is missing in the accused product, literal infringement is not present. *See Kraft foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1370 (Fed. Cir. 2000).

    **2.**  ***Infringement of Claim 25***

  WNA argues that it has established literal infringement of claim 25.  Claim 25 covers "a cutlery article for handling and consuming food, comprising

> *a light transmitting plastic material* and having a plurality of surfaces, wherein at least one surface amongst said plurality of surfaces is deposited with *a thin metal layer* suitable for food contact without an overcoat;
>
> said *thin metal layer* being deposited by a sputter deposition process,

> whereby *a reflective metal-like appearance* is imparted to at least a portion of said cutlery article, and said thin metal layer being *less than about 2000 nanometers.*

(Reexamination Certificate, 2:59-3:6) (emphasis on limitations at issue). The Court finds that there is a dispute of material fact as to whether claim 25 is infringed because Sabert has put forth facts that would allow a reasonable jury to conclude that its product does not use a "light transmitting plastic material."

In its claim construction, the Court construed the term "light transmitting plastic material" to mean:

> A plastic that allows transmission or passage of light therethrough, but must allow the metallic coating to be visible through the plastic material. Light-transmissive plastic materials may include plastic materials such as polystyrene, which has excellent light transmission characteristics, as compared to, for example, polypropylene. Such materials may but need not include light-transmitting dyes or tints.

(Markman Order at 2-3; Doc. No. 113).

WNA argues that there is no dispute as to a material fact despite the fact that Sabert has submitted facts that the plastic cutlery items that it uses are opaque and the metallic coating could not be seen through the plastic article even if it were coated only on one side. (Vergason Reb. Ex. Rep. at ¶¶ 97-102; Doc. No. 163). However, WNA asserts that there is infringement because the *plastic material* itself, polystyrene, is clear and it does not matter that the material becomes opaque when Sabert adds "regrind" to it. (WNA Op. Br. at 14-21). The Court disagrees.

One reason that the Court chose a construction requiring the metallic coating be "visible through the plastic material" was because WNA's statements during reexamination suggested that the invention was different than the prior art because it could coat on only one side and the translucent plastic would allow the metallic coating to be seen through to the other side.

(Markman Hearing Tr. at 13-22). Therefore, a jury could reasonably apply the construction to determine that there is no literal infringement unless a person could see the metallic layer through the underlying plastic article. Sabert has put forth facts that the jury could use to determine that its metallic coating could not be seen through the article if its product was coated on only one side. (Vergason Reb. Ex. Rep. at ¶¶ 97-102; Doc. No. 163). As such, the Court denies summary judgment of infringement as to claim 25.

### 2. *Infringement of Claims 1, 3, 12, and 38 by Sabert's steel-coated products.*

The elements of the claims that Sabert alleges it does not infringe are all present in claim 1, which claims "a metalized plastic food service item comprising:

> a plastic cutlery article having a display surface and an underside, said plastic cutlery article being adapted for placement on a table surface in a traditional table-setting presentation with said underside facing down towards said table surface and said display surface facing upwards; and
>
> a thin metallic coating *deposited on said display surface* of said plastic cutlery article,
>
> wherein said thin metallic coating is characterized by its suitability for food contact without an overcoat, and is at least one of steel and stainless steel,
>
> and wherein said thin metallic coating *is of a sufficient thickness to impart a reflective metal-like appearance* to the plastic cutlery article, to simulate genuine metal cutlery, said thickness being *less than about 2000 nanometers* and wherein said thin metallic coating is deposited by a vacuum deposition process.

(Reexamination Certificate, 1:26-44) (emphasis on terms disputed). In its *Markman* Order, this Court construed the term "reflective metal-like appearance" to mean "the items simulate the metallic appearance of solid metal cutlery and have an optical density greater than 1" and construed "less than about 2000 nanometers" to mean "less than 2200 nanometers."

Sabert makes essentially three arguments to avoid summary judgment: (1) Sabert's products do not have a thickness of "less than about 2000 nanometers" because WNA disclaimed

certain thickness ranges in the prosecution history; (2) Sabert's products do not have an optical density greater than 1, and thus do not have a "reflective metal like appearance"; and (3) Sabert's 30(b)(6) witness argued that because its products have a coating on both sides, its metallic coating is not "deposited on said display surface."

In its first argument, Sabert attempts to turn its back on the testimony of its 30(b)(6) witness, who admitted that the thickness of the metallic layer was less than 2000 nanometers. (Nazareth Dep. at 63:21-64:4). In support of its argument that the thickness of the metallic layer is not "less than 2000 nanometers," Sabert argues that even though its products have a metallic layer with a thickness less than 2000 nanometers, it does not infringe the claims because WNA narrowed that term in prosecution history to exclude thicknesses from 4 nanometers to 70 nanometers. (Sabert Opp. Br. at 13-17). However, Sabert's argument is contrary to the Court's claim construction, which does not so limit the claims. (*Markman* Order, at 3). Sabert may not now make an argument that is contrary to that construction.

Further, the Court notes that the supposed disclaimer is not sufficiently clear to have constituted prosecution history estoppel. *Verizon v. Vonage Holdings Corp.*, 503 F.3d 1295, 1306-07 (Fed. Cir. 2007) (statement must be a clear and unambiguous disavowal of claim scope to constitute prosecution history estoppel). The reference the patentee was responding to was never the subject of a rejection, (Doc. No. 163-5, at ID 5100), and the specific thickness limitations were not mentioned in WNA's response, only the non-reflective nature of the prior art. The only possible disclaimer was a non-reflective metallic coating, which was never claimed; only a "*reflective* metal-like appearance" appeared in the claims. As such, because Sabert cannot contradict the testimony of its 30(b)(6) witness without reason and its argument is contrary to the Court's claim construction, the Court rejects this argument.

The Court notes that Sabert has not lost this reference as a means of invalidating the claims. Sabert may still argue that this reference renders the claims obvious in light of the prior art.

In its second argument, Sabert again attempts to contradict its 30(b)(6) witness and the Court's claim construction of the term "reflective metal-like appearance." Sabert's 30(b)(6) witness Mr. Nazareth testified that Sabert's products have a "reflective metal-like appearance" and that the optical density of Sabert's accused stainless steel and titanium coated cutlery was greater than 1. (Nazareth Dep. at 81:12-20, 120:15-22).

Sabert now attempts to contradict this, not on the basis that Mr. Nazareth was wrong to opine the optical density of the items was greater than 1, but because Sabert believes that only the thickness of the metallic coating is relevant to optical density. Sabert asserts that the optical density of its metallic coating without its opaque base or coating or bottom-coat is less than 1.[2]

Sabert's only support for this is the rebuttal expert report of Gary Vergason, who tested the metallic layers. However, Vergason intended to exclude the dark substrate and only measure the metallic coating.[3] (Vergason Reb. Ex. Rep. at Appx. A-E; Doc. No. 163). This is contrary to this Court's claim construction, which stated that "*the items* simulate the metallic appearance

---

[2] While Gary Vergason's expert report opines that he measured the optical density of Sabert's *products*, (Vergason Reb. Ex. Rep. at ¶68), his citation for this opinion shows that he did not measure Sabert's products but rather attempted to isolate the optical density of the metallic coating only. Vergason isolated the optical density of the metallic thickness by comparing reflectivity values of known thicknesses on clear slides and clear spoons, then subtracting out the known optical densities of the underlying clear material. This allowed Vergason to determine the correlation between the optical density of the metallic layer *only* versus the reflectivity of the layer. He then compared the *reflectivity* of the *metal layer* on Sabert's products with the optical density correlated with that reflectivity. (*Id.* at Appx. A-E). Even if this methodology is proper, it only measures the optical density of the metallic coating, not the metallic coating and the "item," which is relevant to the Court's construction. As demonstrated by Vergason's own tests, the optical density of the *item* itself will be substantially greater than that of the metallic coating alone. Indeed, as demonstrated in Appendix C, even when coated on only one side and using a clear substrate, a Sabert-like thickness on a clear substrate has an optical density of 1.0. Sabert's products are coated on two sides, not one, and Sabert asserts that they have an opaque substrate, both of these factors would increase the optical density because they would decrease the transmission of light through the item. (*See id.* at Appx. A). Thus, even if the Court were to consider this portion of the report, it leads to the inescapable conclusion that Sabert's products have optical densities greater than 1.
[3] The Court notes that the opinions in this Rebuttal Expert Report were timely.

of solid metal cutlery and have an optical density greater than 1." The court used the term "*the items*" deliberately and did not list the metallic coating in isolation. Indeed, the Court notes that the portion of the specification immediately below the part that states that "optical density values of 1 and under" lack adequate opacity for a metallic appearance, the specification notes that the optical density can be enhanced by "incorporat[ing] a light transmitting dye or tint in the *base material*." ('542 patent, 10: 45-49) (emphasis added). Therefore, as contemplated by the Court's construction, it is clear that for the optical density takes into account the underlying material. Because this portion of Vergason's expert report is contrary to the Court's claim construction, it is not relevant and will not be considered.

Further, the Court notes that even if Vergason's findings did contradict the 30(b)(6) testimony of Mr. Nazareth, it might run afoul of the sham affidavit doctrine as "an affidavit offered solely for the purpose of defeating summary judgment" and without a reasonable explanation of the difference of opinion. *See Jiminez v. All American RathSkeller, Inc.*, 503 F.3d 247, 253-54 (3d Cir. 2007); *see also Sinskey v. Pharmacia Opthalmics, Inc.*, 982 F.2d 494, 498 (Fed. Cir. 1992).

With Vergason's rebuttal report removed from consideration, Sabert cannot avoid the fact that its products meet the "reflective metal-like appearance" limitation of the patent. Mr. Nazareth testified that Sabert's products had optical densities that were greater than 2 and had a reflective metal-like appearance that emulated real metal cutlery.

Sabert's final argument – the theory of Mr. Nazareth that coating the entire article does not coat the "display side" – is also legally invalid. If Sabert coats its products on all sides, then logic dictates that it coats them on the display side.

This is the sum total of the disputes as to infringement that Sabert has advanced for these claims. In both its briefing and Vergason's rebuttal expert report, Sabert advances no additional arguments that its products do not infringe the dependent claims of the patent. (Vergason Reb. Ex. Rep. at ¶ 64-116; Doc. No. 163). Further, Mr. Nazareth agreed that Sabert's relevant steel products met the additional limitations of the dependent claims. (Nazareth Dep. at 79-87). Specifically, Mr. Nazareth agreed that the additional limitation of claim 3, that the metallic coating be less than 1000 nanometers, was present in Sabert's products. (*Id.* at 80:4-12). Mr. Nazareth agreed that Sabert's products contained the additional limitation of claim 12 – that the products were made with sputtering deposition. (*Id.* at 82). Neither Nazareth nor Vergason disputed that Sabert's products use a coating that is less than 200 nanometers thick, which is the additional limitation of claim 35. (*Id.* at 84:9-16; *see also* Vergason Reb. Ex. Rep. (suggesting that the products have metallic thicknesses of 10-15 nanometers)). Finally, claim 38 actually has fewer limitations than claim 1 and the only limitation that is different requires the plastic article to be coated on "at least a portion" of the cutlery article. There can be no dispute that Sabert's products, which it coats on all surfaces, are coated on "at least a portion" of the cutlery article.

Sabert represented that Nazareth was qualified to answer these questions. As such, it is bound by his testimony and the Court will enter summary judgment as to these claims.

### 3. *Vergason's Declaration*

Also raised in the papers is whether Vergason's rebuttal of Dr. Donald McClure's "Tobias" densitometer testing that was served only in response to this summary judgment motion should be stricken. The Court concludes that because Vergason's expert declaration goes beyond his expert report and was served after the end of expert discovery, the testimony should be excluded.

Pursuant to Fed. R. Civ. P. 26(a)(2)(B), an expert is required to provide a report including:

> a *complete* statement of all opinions the witness will express and the basis and reasons for them;
>
> the data or other information considered by the witness in forming them[.]

(Emphasis added).

If a party "learns that in some material respect the disclosure or response is incomplete or incorrect" the party must supplement that disclosure within the time set by the Court. Fed. R. Civ. P. 26(a)(2)(D), 26(e), 37(c)(1). "If a party fails to provide information . . . . as required Rule 26(a) or (e). . . the party is *not allowed to use that information or witness to supply evidence on a motion*, at a hearing, *or at a trial*, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). As such, if an expert omits opinions or their basis from his report, he cannot remedy those deficiencies to support a motion unless the failure was justified or harmless. Rule 37, commentary to 1993 Amendment; *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (affirming the exclusion of late-produced evidence).

A district court's decision to exclude that evidence is within its discretion. *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997). In exercising that discretion, the district court should consider four factors:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;
> (2) the ability of the party to cure that prejudice;
> (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and
> (4) bad faith or wil[l]fulness in failing to comply with a court order or discovery obligation.

*Nicholas*, 227 F.3d at 148.

The Court concludes that the evidence should be excluded here. While Sabert's conduct falls short of willful bad faith, the Court notes that it has offered this evidence in an effort to contradict the testimony of its own 30(b)(6) witness and to respond to a report that its expert already had a chance to respond to. Further, there is prejudice here because Vergason has made this opinion outside the end of fact discovery and without warning to WNA. That prejudice will be difficult to cure with less than one week before trial.

The Court also notes that there is little to no justification for this late disclosure. Sabert had the Court's claim construction that put optical density in issue more than two months prior to serving its opening expert reports and more than three months before the close of expert discovery. (*See* Doc. No. 113; Doc. No. 128). Further, Sabert had in its possession the expert report of Donald McClure prior to serving Vergason's rebuttal expert report. Vergason failed to respond to this testing or undermine its accuracy; merely labeling it "overkill." As such, the Court concludes that there was no justification for Sabert submitting the declaration outside the deadline. Therefore, the Court does not consider the additional declaration in this opinion and the information therein may not be asserted at trial.

**III.     CONCLUSION**

For the foregoing reasons, WNA's motion for summary judgment of literal infringement is granted in part and denied in part. The parties will try the infringement of claim 25 to the jury; summary judgment is granted on the remaining claims. Further, the declaration of Gary Vergason served in response to this motion for summary judgment may not be used at trial.

Dated: March 22, 2011

   /s/ Garrett E. Brown, Jr.   
GARRETT E. BROWN, JR., U.S.D.J.
